**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **Countryside Industries, Inc.,** | |
| Plaintiff, | |
| v. | No. |
| **Construction & General Laborers' District Council of Chicago and Vicinity; and Laborers' International Union Local 118,** | |
| Defendants. | |

```
FILED: MAY 29, 2008
08CV3108        TC
JUDGE MANNING
MAGISTRATE JUDGE SCHENKIER
```

## COMPLAINT

Plaintiff, Countryside Industries, Inc. (hereafter, "Countryside"), by and through its attorneys, hereby files in this Court a Complaint for damages pursuant to Section 303 of the Labor-Management Relations Act, 29 U.S.C. §§ 158(b)(4) and 187, and Illinois state law.  In support of this Complaint, Countryside states as follows:

### JURISDICTION AND VENUE

1.      Count I of this Complaint arises and jurisdiction of the Court is founded upon the provisions of Section 303 of the Labor-Management Relations Act, 29 U.S.C. § 187, which invests federal courts with jurisdiction over suits against labor organizations which engage in any activity or conduct, in an industry affecting commerce, defined as an unfair labor practice under 29 U.S.C. § 158(b)(4).

2.      With respect to Count II, the jurisdiction of the Court is founded upon the provisions of 28 U.S.C. § 1367(a).

## THE PARTIES

3.    Countryside is a corporation, incorporated and operating under the laws of the State of Illinois, with its principal place of business in Wauconda, Illinois.  Countryside is a landscaping business and is signatory to a collective bargaining agreement with Operating Engineers Local 150 / Teamsters Local 703.    Countryside annually derives income in excess of $50,000.  At all material times, Countryside has been an employer engaged in commerce whose activities affect commerce within the meaning of Section 2(6) and (7) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 152(6)(7).

4.    Construction & General Laborers' District Council of Chicago and Vicinity and Laborers' International Union Local 118 (hereafter, "The Unions") are unincorporated labor organizations within the meaning of Section 2(5) of the National Labor Relations Act, 29 U.S.C. § 152(5), and Section 303 of the Labor-Management Relations Act, 29 U.S.C. § 187, which represent employees engaged in an industry affecting commerce, and maintain principal places of business and otherwise transact business within the State of Illinois and the Northern District of Illinois. Countryside has no contract with The Unions.

## FACTS

5.    The Arboretum of South Barrington (hereafter "Arboretum") is a commercial development currently being constructed in South Barrington, Illinois.

6.    The general contractor for the construction of the Arboretum is Ragnar Benson Construction, LLC (hereafter, "Ragnar Benson").  Ragnar Benson is signatory to a labor agreement with The Unions.

7.    In or about January of 2008, Ragnar Benson entered into a contract with Countryside for the landscaping work at the Arboretum.  (Exhibit A).

Complaint

8.      The Unions do not want Countryside performing work the Arboretum, because Countryside has no contract with the Unions.

9.      Beginning in approximately March, 2008, and continuing, The Unions have repeatedly threatened Ragnar Benson and the Arboretum not to contract with or do business with Countryside.

10.     Beginning on Monday, May 19, 2008, The Unions have unlawfully picketed and threatened to picket the Arboretum worksite in order to prevent Ragnar Benson and/or the Arboretum from doing business with Countryside.

11.     At times in May, 2008, as a result of these unlawful threats and pickets, work at the Arboretum has been halted.

12.     As a result of these threats and pickets, Countryside has been unable to perform the landscaping work at the Arboretum, and has suffered substantial monetary damages.

13.     As The Unions continue to unlawfully threaten and unlawfully picket, Countryside's damages multiply day by day.

## COUNT I: SECTION 303 VIOLATION

14.     Plaintiff incorporates by reference Paragraphs 1 to 13 as if fully restated herein.

15.     These activities of The Unions, and their duly authorized representatives, agents or employees, are in direct violation of 29 U.S.C. § 158(b)(4), in that such actions were done for the purpose of threatening, coercing, and restraining secondary employers (Ragnar Benson and the Arboretum) with the object of forcing these secondary employers to cease doing business with Countryside.

## COUNT II: TORTIOUS INTERFERENCE WITH CONTRACT AND/OR PROSPECTIVE ECONOMIC ADVANTAGE

16.     Plaintiff incorporates by reference Paragraphs 1 to 13 as if fully restated herein.

Complaint

17.    Countryside has or had maintained contractual and business relationships, or valid business expectancies, with Ragnar Benson and the Arboretum.

18.    The Unions, and their duly authorized representatives, agents or employees, had knowledge of Countryside's relationships and expectancies.   The Unions targeted Ragnar Benson and the Arboretum because they had relationships with Countryside.

19.    The Unions intentionally interfered, and continue to intentionally interfere, with Countryside's contractual and business relationships, or valid business expectancies, with Ragnar Benson, the Arboretum, and others.

20.    Countryside has been damaged as a direct result of The Unions' interference in that it has lost significant business and has sustained severe financial losses and loss of standing in its business community.

21.    The Unions acted willfully and maliciously and with wanton and reckless disregard for Countryside's legal rights.

22.    Countryside demands trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Countryside Industries, Inc. demands judgment against Defendants as follows:

1.    Monetary damages in excess of $50,000, the exact amount to be ascertained;

2.    The amount of further damages suffered after the filing of the Complaint;

3.    Plaintiff's costs of suit; and

4.    Such other and further relief as this Court may deem just and proper.

Complaint

Respectfully Submitted,


/s/ David L. Christlieb
_____
                    David L. Christlieb

Adam C. Wit (#06230538)
David L. Christlieb (#06281173)
LITTLER MENDELSON
A Professional Corporation
200 N. LaSalle Street
Suite 2900
Chicago, IL  60601
312.372.5520

Dated: May 29, 2008

Complaint

08CV3108          TC
JUDGE MANNING
MAGISTRATE JUDGE SCHENKIER

# Exhibit A

# AGREEMENT

## between

# RAGNAR BENSON CONSTRUCTION, LLC

## and

# COUNTRYSIDE INDUSTRIES, INC.
**Subcontractor**



| | |
|---|---|
| **R.B.  Job No.:** | **Job No. 07-4146-005   GB** |
| **Contract No.:** | **4146-005-01** |
| **Date:** | **January 28, 2008** |

1



# Subcontract

This **Agreement #4146-005-01 – Job #07-4146-005**, made this **28th** day of **January, 2008**, between:

**RAGNAR BENSON CONSTRUCTION, LLC**, an Illinois limited liability company, **250 S. Northwest Highway, Park Ridge, Illinois 60068, TEL: 847-698-4900 FAX: 847-692-9320** ("Contractor"), and

**COUNTRYSIDE INDUSTRIES, INC., 29947 North Rand Road, Wauconda, IL 60084 TEL: 847-526-1909 FAX: 847-526-9094** (hereinafter called "Subcontractor").

The Contractor has entered into a contract ("General Contract"), with the Owner: **ARBORETUM OF SOUTH BARRINGTON, LLC** (hereinafter called "Owner").

For the Project known as: **The Arboretum of South Barrington** (the "Project").

as per plans, drawings, specifications, general conditions, and other documents incorporated in the General Contract (the "Contract Documents"). The Contract Documents are a part of this agreement and are incorporated in this agreement by reference, and

NOW THEREFORE, in consideration of the mutual promises set forth in this agreement, the Contractor and the Subcontractor agree as follows:

1. **Subcontractor.** (a) The Subcontractor warrants and represents that the Subcontractor has examined the Contract Documents, all plans, drawings and specifications prepared by the Owner or his (its) (their) Architect or Representative, for the entire Project, of which the work covered by this Agreement is a part, and that the Subcontractor and his subcontractors, will be and are bound by any and all parts of the Contract Documents insofar as they relate in any part or in any way to the Subcontract Work (as defined below), and shall be further bound to Subcontract Documents (as defined below).

   (b) The Subcontractor is thoroughly familiar with the site conditions, shipping and delivery facilities, local Zoning Ordinances and Building Codes, and all other matters and conditions which will affect the operation and completion of the Subcontract Work (the "Existing Conditions") and the Subcontractor assumes all risks which arise out of the Existing Conditions.

   (c) The Subcontractor, as an independent contractor, agrees to furnish and pay for all labor, materials, tools, supplies, equipment, utilities, transportation, insurance, and services necessary to construct and complete all the Subcontract Work in a workmanlike manner and in accordance with the Subcontract Documents. The Subcontract Work is:

| | |
|---|---|
| TYPE OF CONTRACT: | LUMP SUM |
| DIVISION OF WORK: | SITEWORK |
| SUBCONTRACT WORK: | Provide all labor, material, equipment, tools, supervision and |

2

insurance necessary to Seed, Water and Remove Rock, and Install Irrigation Sleeves – Park District Area - in accordance with:

Countryside E-mail dated Thursday, November 29, 2007

CONTRACT DOCUMENTS:     Attached Countryside E-mail dated Thursday, November 29, 2007

SUBCONTRACT AMOUNT: As full compensation for performance of this Agreement, Contractor agrees to pay Subcontractor in current funds for the satisfactory performance of the Subcontract Work, subject to all applicable provisions of this Subcontract (the fixed price, unit prices and/or time and material rates and prices are referred to as the "Subcontract Amount"):

the fixed price of **ONE HUNDRED SIXTY-ONE THOUSAND FIFTY DOLLARS ($161,050.00)** subject to additions and deductions as provided for in the Subcontract Documents;

(d)     As a condition to payment, the Subcontractor shall provide a schedule of values satisfactory to the Contractor not more than fifteen (15) days from the date of execution of this Agreement.

(e)     The Subcontract Documents include this agreement, the General Contract, the Contract Documents, and the drawings, specifications, addenda, and other matters described on the Contract Documents Schedule attached to this Agreement.

(f)     The Subcontractor agrees to furnish its best skill and judgment in the performance of the Subcontract Work and to cooperate with the Contractor so that the Contractor may fulfill its obligations to the Owner. The Subcontractor shall furnish all of the labor, materials, equipment and services, including but not limited to, competent supervision, shop drawings, samples, tools, and scaffolding as are necessary for the proper performance of the Subcontract work. The Subcontractor shall provide the Contractor a list of its proposed subcontractors and suppliers, and be responsible for taking field dimensions, providing tests, obtaining required permits related to the Subcontract Work and affidavits, ordering of materials and all other actions as required to meet the Project Schedule.

(g)     The Subcontractor shall make a careful analysis and comparison of the drawings, specifications, other Subcontract Documents and information furnished by the Owner relative to the Subcontract Work. Such analysis and comparison shall be solely for the purpose of facilitating the Subcontract Work and not for the discovery of errors, inconsistencies or omissions in the Subcontract Documents nor for ascertaining if the Subcontract Documents are in accordance with applicable laws, statutes, ordinances, building codes, rules or regulations. Should the Subcontractor discover any errors, inconsistencies or omissions in the Subcontract Documents, the Subcontractor shall report the discoveries to the Contractor in writing within three (3) days. Upon receipt of notice, the Contractor shall instruct the Subcontractor as to the measures to be taken and the Subcontractor shall comply with the Contractor's instructions. If the Subcontractor performs work knowing it to be contrary to any applicable laws, statutes, ordinances, building codes, rules or regulations without notice to the Contractor and advance approval by appropriate authorities, including the Contractor, the Subcontractor shall assume appropriate responsibility for such work and shall bear all associated costs, charges, fees and expenses necessarily incurred to remedy the violation. Nothing in this paragraph shall relieve the Subcontractor of responsibility for its own errors, inconsistencies and omissions.

(h)     The Subcontractor promptly shall submit for approval to the Contractor all shop drawings, samples, product date, manufacturer's literature and similar submittals required by the Subcontract Documents. The Subcontractor shall be responsible to the Contractor for the accuracy and conformity of its

3

submittals to the Subcontract Documents. The Subcontractor shall prepare and deliver its submittals to the Contractor in a manner consistent with the Progress Schedule and in such time and sequence so as not to delay the Contractor or others in the performance of the Work. The approval of any Subcontractor submittal shall not be deemed to authorize deviations, substitutions or changes in the requirements of the Subcontract Documents unless a specific express, written approval is obtained form the Contractor and the Owner authorizing such deviation, substitution or change. In the event that the Subcontract Documents do not contain submittal requirements pertaining to the Subcontract Work, the Subcontractor agrees upon request to submit in a timely fashion to the Contractor for approval any shop drawings, samples, product data, manufacturers' literature or similar submittals as may reasonably be required by the Contractor, Owner or Architect/Engineer.

   (i)  The Contractor, Owner, and Architect/Engineer are entitled to reply on the adequacy, accuracy and completeness of any professional certifications required by the Subcontract Documents concerning the performance criteria of systems, equipment or materials, including all relevant calculations and any governing performance requirements.

   2. **Schedules.**  Time is of the essence of this Agreement and the Subcontractor shall perform the Subcontract Work in accordance with the Project Schedule and otherwise to the satisfaction of the Contractor and the Owner. The Subcontractor will conduct the Subcontract Work in the required by the Owner, promptly and efficiently, and if necessary and directed by the Owner, certain parts of the work shall be prosecuted in preference to others without compensation to the Subcontractor. If the Subcontractor is obstructed or delayed in the commencement, prosecution or completion of the work by strikes, floods, delays in transportation, accident or other causes beyond the reasonable control of the Subcontractor, the Subcontractor may submit a claim for an extension of the time for the performance of the Subcontract Work. Any such claim shall be in writing and filed with the Contractor within 48 hours after the event causing the delay. With the prior written approval of the Owner, the Contractor may, in its reasonable discretion, approve an extension of the time for the performance of the Subcontract Work equivalent to the actual delay incurred by the Subcontractor. Any such approval shall be in writing and shall state the duration of the extension.

   3. **Indemnification.**  (a)  To the fullest extent permitted by law, the Subcontractor shall indemnify and hold harmless the Contractor, the Owner, and their respective officers, directors, agents, and employees from and against any and all loss, liability, damages, costs, attorneys fees, investigative costs, or other expenses of any kind (all of which are collectively referred to as "Costs") arising in connection with: (i) any claim or claims for death or injury to persons employed by the Subcontractor or any of its subcontractors, if any, agents or employees, or any of them (all of whom are collectively referred to as the "Subcontractor Parties"); (ii) any claim or claims for injuries, for loss or damage to or destruction of property, real or personal, including loss of use, which arise out of the Subcontract Work or the actions of any Subcontractor Party; (iii) any infringement or claim of infringement of patent or other intellectual property rights arising out of or in connection with anything done or furnished by a Subcontractor Party; and (v) any other claim under state or federal laws which arises out of the actions of a Subcontractor Party or any person for whom any of them is responsible. The Subcontractor shall not, however, be obligated to indemnify or hold harmless any party for any Costs to the extent that the Costs are due solely and directly by the negligence of the of that party.

   (b)  The Subcontractor's indemnification obligations under this agreement shall not be limited by any limitation on the amount or type of benefits payable by or for Subcontractor under workers compensation, disability benefit, or other employee benefit acts.

   (c)  The Subcontractor's indemnification obligations under this agreement are not limited by the insurance requirements of this Agreement. In addition to the indemnification obligations hereunder, The Subcontractor waives, and shall cause each of its subcontractors of every tier to waive, any rights under any workers compensation, disability, or other employee benefit act, that any of them may have to limit the amount of damages, losses, or obligations which may be recoverable under this indemnification or under

4

contribution acts or other applicable laws.

(d)     Subcontractor shall indemnify and hold the Contractor and the Owner harmless from any and all liens, encumbrances, claims, obligations or liabilities ("Liens") which may be asserted against the Contractor, Owner or their property by reason of or as a result of any acts or omissions of the Subcontractor, his employees, representatives, licensees, or subcontractors, in connection with or related to the performance of this Agreement. The Contractor may withhold and retain from time to time out of any moneys due the Subcontractor amounts sufficient fully to obtain the release or satisfaction of such a Lien and to recover any loss or damage which the Contractor sustains, or may sustain, as a result of any such Liens.

(e)     The Subcontractor assumes the risk of and liability for loss or damage to the Subcontractor's materials, tools or equipment.

(f)     In the event that the Subcontractor contracts with any other person for the performance of any of the Subcontractor Work (a "Lower Tier Subcontract"), each such "Lower Tier Subcontract" shall include the indemnification of the Contractor, the Owner, and their respective officers, directors, agents and employees, on the terms provided in this paragraph 3.

4. **Insurance.** (a)     At its expense, the Subcontractor shall obtain and maintain in full force and effect during the Subcontractor's performance of this Agreement the insurance coverage described in this subparagraph; provided, however, that if the General Contract provides for a project specific limit and/or coverage in any category which is greater or more extensive than those set forth below, or for any category of coverage which is not provided for in this agreement, the project specific limit and/or coverage shall apply (the "Required Insurance"):

| | | |
|---|---|---|
| Workmen's Compensation | Statutory for the State of Operation | |
| Employer's Liability | $1,000,000.00 | Each Accident |
| | $1,000,000.00 | Each Disease |
| | $1,000,000.00 | Each Employee Disease |
| Commercial General Liability | $2,000,000.00 | Each Occurrence |
| | $2,000,000.00 | General Aggregate |
| | $2,000,000.00 | Products and Completed Operations Aggregate |
| Automobile Bodily Injury & Property Damage: Liability, Combined Single Limit, INCLUDING Owned, Non-Owned & Hired Automobiles | $1,000,000.00 | Combined Single Limit |
| Umbrella Liability | $10,000,000.00 | |

(b)     The Commercial General Liability coverage shall include the following coverages: Premises Operation, Independent Contractors, Contractual Liability, XCU Coverage (with exclusions applicable to these hazards deleted), Products/Completed Operations, and shall be written on a Per Location / Job Site Aggregate basis. This coverage shall include a waiver of subrogation in favor of the additional insureds.

(c)     The Subcontractor and each of its subcontractors shall name Ragnar Benson Construction, LLC, Arboretum of South Barrington, LLC, RREEF America, LLC, RREEF Management Company, CalSmart LLC, WEB Development Partners, LLC, and Eurohypo, AG on a basis specific to the Project, as additional insureds under their Commercial General, Automobile & Umbrella/Excess liability policies. The Subcontractor's insurance polices shall be endorsed as primary/non-contributory to any insurance of the

additional insureds. Subcontractor's Excess/Umbrella coverage is to follow form, and shall follow the General, Automobile and Employers Liability policies. The form of the Excess/Umbrella coverage shall be stated as such on the certificates of insurance: Each additional insured endorsement shall be made utilizing Form CG2010 (11/85) or Form CG2010 (1993) in conjunction with Form CG2037 (2001), or using equivalent forms. The additional insured endorsement shall be attached to the Certificate of Insurance.

(d)     The policies shall provide the Contractor with not less than thirty (30) days written notice in advance of cancellation, termination, change or amendment restricting coverage.

(e)     Subcontractor agrees to furnish the Required Insurance using companies satisfactory to Contractor (except in cases where Worker's Compensation and Occupational Disease Insurance are required to be insured under so-called "state fund" provisions) and to obtain and deliver to Contractor certificates issued by the respective insurers showing the Required Insurance to be in effect and expressly confirming that it meets the requirements of this agreement. If the Subcontractor fails to carry any insurance required under this agreement, the Contractor may procure the insurance on the Subcontractor's behalf and charge the cost of the insurance to the Subcontractor, but the Contractor shall not be required to obtain any insurance on behalf of the Subcontractor.

(f)     To the fullest extent permitted by law, the Subcontractor's (and each of its Subcontractors') Worker's Compensation and Employer Liability coverage shall include a waiver of subrogation in favor of the additional insureds.

(g)     The Subcontractor's Completed Operations Coverage shall extend not less than two years after the completion of the Subcontract Work.

(h)     The Subcontractor's progress payments will not be made until all insurance requirements are met.

5.     **Labor Conflicts**. (a)     The Subcontractor will use no labor that will cause a conflict with other labor employed at the site or in the Project and or will otherwise result in a delay or cessation of work on the Project, or permit any of his subcontractors or material suppliers to use labor that may conflict with other labor employed on the Project. The Subcontractor shall not employ any workers to whose employment on the Project the Contractor reasonably objects or the Owner objects in accordance with the General Contract.

(b)     The Subcontractor agrees that none of its employees and none of the employees of its subcontractors who provide services pursuant to this Agreement, will be unauthorized aliens, as defined in the Immigration Reform and Control Act of 1986. Subcontractor agrees that all workers performing work under this Agreement will be required to provide documentation that will establish their identity and employment eligibility in accordance with all applicable laws. Subcontractor shall require that all individuals employed by the Subcontractor or any of its subcontractors will be required to complete the Employment Verification Form I-9 before entering the jobsite.

6. **Safety**. (a)     The Subcontractor shall assume the sole responsibility for the safety of, and shall take all necessary measures and precautions to prevent injuries to or the death of any of its employees or any other person who enters upon the Owner's premises for reasons relating to this Agreement. The Subcontractor shall also take all necessary measures and precautions to protect and to avoid damage to or loss of any property while on the Owner's premises, including all necessary safeguards to warn and protect workers and others against hazards and to prevent accidents of any kind whenever work is being performed in proximity to any moving or operating machinery, equipment or facilities. The Subcontractor shall repair, restore and replace any real or personal property, including tools and equipment, belonging to the Contractor or the Owner which Subcontractor or its subcontractors or suppliers or their respective employees, contractors, or invitees, may damage or destroy while on the Owner's premises.

(b)     The Subcontractor, its employees, and its subcontractors shall comply with the safety requirements established for the Project by the Contractor and with any safety requirements established for the Project or the site of the Project by the Owner. The establishment of a safety program by the Contractor

or the Owner shall not relieve the Subcontractor or any other parties from their job-site safety responsibilities, and the Subcontractor shall establish its own safety program implementing safety measures, policies, and standards that, at a minimum, conform to those required or recommended by any applicable governmental or quasi-governmental organization having jurisdiction and with those of the Contractor and the Owner. The Subcontractor shall also comply with the reasonable recommendations of insurance companies having an interest in the Project and shall stop any part of the Work which the Contractor determines to be unsafe. The failure of the Contractor to stop the Subcontractor's unsafe practices shall not relieve the Subcontractor from its responsibilities for job site safety. In addition, the Subcontractor shall ensure that all employees and subcontractors of the Subcontractor comply with the safety rules set forth in the General Safety Requirements Schedule attached to this Agreement.

(c)    In addition to the safety practices described in the General Safety Schedule, the Subcontractor shall comply with, and shall assume the cost of compliance with each applicable governmental standard, and each standard established in the Contractor's Safety Manual, whichever provides the greater protection. In the event that the Subcontractor fails to comply with any applicable safety requirements, the Contractor shall be entitled to order the Subcontractor to cease work, and may exclude the Subcontractor from the jobsite, pending correction. In the event of deliberate, repeated, willful, or compounded failures to comply, the Contractor shall be entitled to terminate this contract. The Subcontractor will bear all costs incurred by the Contractor resulting from work cessation, jobsite exclusion, corrective measures, contract cancellation, costs associated with replacing the Subcontractor with another contractor, or otherwise occasioned by the Contractor's or the Owner's enforcement of the safety provisions of this contract.

(d)    The Subcontractor shall comply with the requirements of the Occupational Safety and Health Act of 1970 and the Construction Safety Act of 1969, and shall provide and maintain appropriate Material Safety Data Sheets in conformance to the State & Federal Hazard Communication Programs and "Right to Know" acts. The Subcontractor shall indemnify the Contractor against and hold the Contractor harmless from all OSHA penalties, penalties imposed by any state safety agency, and all associated litigation costs that may be incurred by the Contractor as a result of the Subcontractor's non-compliance with OSHA or applicable state standards or rules.

(e)    To provide sufficient, safe and proper facilities at all times for the inspection of the work by the Owner, the Contractor and the authorized representatives of either.

(f)    General Safety Requirement Schedule:

- The Subcontractor shall notify the Contractor immediately following any job-site or job related accident and shall promptly confirm the notice in writing. If requested by the Contractor or the Owner, the Subcontractor shall furnish a detailed written report of any job–site accident or job related accident.
- Hard hats shall be worn at all times while on site. During periods of high winds, insure a chin strap is obtained, properly adjusted and used. The cradle of the hard hat shall be adjusted so that the weight of the hat is carried on it. There must be 1 ¼" clearance between the top of the hat and the head. Exceptions to the requirement to wear hard hats are allowed only in the following cases:
  o  Inside the main office trailers.
  o  Inside enclosed vehicles.
  o  While welding with the use of a welding helmet with over-the-head harness.
  o  Where the head protection may otherwise constitute a hazard, e.g., upside-down position, narrow openings, etc.
- Do not draw the headband too tight, just snug enough to prevent the hat from tilting. Special liners for winter use should be used.
- Inspect the hat daily for broken rim or crown, defective headband or cradle, etc. Replace if any defects are detected, and keep the headband clean.

- Do not cut or drill holes in the hat. The hat will be weakened and the protection ability destroyed.
- Hard hats shall be worn with the bill to the front.
- All safety hats must meet ANSI Standard 289.2-1971 Class B and 289.1 Class A; and must not be altered in any way.
- Ear protection (muffs or plugs) must be worn on all high noise level jobs.
- All Subcontractors are to follow OSHA Hazard Communications Standards.
- All engines shall be shut off when refueling.
- Personal radios, compact disc players, digital music players or game devices, or other similar devices are not permitted on the jobsite.
- Employees shall not operate machines or equipment unless thoroughly familiar with operating procedures and authorized by your supervisor.
- Gas and air cylinders shall be secured in a vertical position. When not in use, permanent cylinder caps shall be placed on valves.
- Remove guardrails and barricades only when authorized. When safety rails are down, do not leave the area unprotected.
- All switches or drives on machinery shall be shut down and locked out before any cleaning, greasing or repair operation.
- No workers shall go up on scaffolding without proper flooring, toe boards and guardrail, except for erection or dismantling work.
- Workers are not to use or possess any intoxicants or drugs on Owner's property, equipment or vehicles and shall not at any time during work hours be under the influence of intoxicants or drugs.
- Employees will report unsafe conditions or practices to their foreman.
- All machine guards are to be kept in place during operation.
- No employee will enter any excavation or trench unless another employee is present on the surface.
- Nails are to be stripped from lumber as soon as it is dismantled.
- Loose or unstable objects (concrete block, barrels, boxes, etc.) are not to be used as supports for scaffolding, ladders or plank.
- Visually check electric hand tools and extension cords daily. Remove defective tools and cords from service. Follow assured grounding procedures and tests.
- All ladders shall be tied off and extended 36" above landings.
- All trucks and mobile equipment shall have backup warning devices as required by OSHA.
- The Subcontractor is responsible for maintaining good housekeeping in their work areas. Each Subcontractor will remove from the jobsite all debris resulting from their operation.
- The Subcontractor, prior to the start of on-site activities, shall review and be familiar with Contractor's Safety Manual. The Contractor's Safety Manual can be reviewed at the jobsite or can be obtained on CD upon request. Subcontractor will conduct weekly Safety Meetings for its personnel. A report listing topics discussed and the names of attendees must be sent to the Contractor's Job Superintendent.
- The Subcontractor is required to have a Job Site Safety Representative for this Project.
- Subcontractors working with or near other trades must determine if their employees are exposed to unsafe acts by other trades.

7. **Changes.** (a) Contractor, at any time before completion of the work, may order additions, omissions or alterations to or in the Subcontract Work, materials or equipment, but no such changes shall be made except by a written order signed by the Contractor in which the additional amount to be paid, the

8

amount to be deducted, or the changes in the Project Schedule as a result of the change is expressly stated. In the event that this Agreement specifies unit prices for the work, those unit prices shall be used in determining the appropriate payment or credit for changes. All prices for changes for work not covered by unit prices must be approved in writing by the Owner and the Contractor.

(b)     All work shall be subject to the inspection and approval of the Contractor or the Owner at all times, but their approval shall not relieve the Subcontractor of responsibility for the proper performance of his work. Subcontractor, at any time during progress of the work, shall within twenty-four (24) hours after receiving written notice from the Contractor to do so, proceed and remove from the premises all materials which the Contractor determines to be unacceptable, whether assembled or not, and to dismantle all portions of the work which the Contractor determines to be unacceptable as unsound or improper or which in any way fail to conform to the requirements of this Agreement, and to replace at his own expense all such work and materials. If the Subcontractor fails to do so, then the Contractor may, at its option, cause the same to be removed and replaced and charge the expense of removal and replacement to the Subcontractor.

8. **Disputes.** (a)     In the event of any dispute involving this Subcontract or the Subcontract Work performed or to be performed, or any claims of Subcontractor, the Subcontractor will nevertheless continue to perform the Subcontractor's Work in a diligent manner without interruption, deficiency, or delay, and if the Subcontractor continues to perform and is not otherwise in default, the Contractor shall continue to make payments to the Subcontractor in accordance with this agreement. In case of any dispute between Contractor and Subcontractor in any way relating to or arising from any act or omission of the Owner, Owner's agents or involving the Contract Documents or any provision of them, the Subcontractor agrees to be bound to Contractor by the terms of the Contract Documents to the same extent that Contractor is bound to Owner, and by any and all preliminary and final decisions, determinations or agreements made by or between Contractor or Owner or otherwise authorized in the Contract Documents. If the Contract Documents require Contractor and the Owner to arbitrate any claim, dispute or other matter arising out of or relating to the Contract Documents, Subcontractor agrees that any claim, dispute or other matter arising out of or relating to the Subcontract, shall be subject to binding arbitration under the rules or procedures described in the Contract Documents, or if there are none, pursuant to the Construction Industry Rules of the American Arbitration Association. In Contractor's sole discretion, any arbitration between Contractor and Subcontractor may be consolidated into and become a part of the arbitration proceedings between the Owner and Contractor, and the consolidated arbitration shall bind Contractor and Subcontractor. If the Contract Documents do not require Contractor to arbitrate, neither Contractor nor Subcontractor shall have the right to arbitrate claims, disputes or other matters relating to this Subcontract or Subcontractor's Work.

(b)     If a dispute arises out of or relates to this Agreement or its breach, the parties shall endeavor to settle the dispute first through direct discussions. If the dispute cannot be resolved through direct discussions, the parties shall participate in mediation under the Construction Industry Mediation Rules of the American Arbitration Association before any recourse to any other form of binding dispute resolution. The location of the mediation shall be the location of the Project. Once a party files a request for mediation with the other party and with the American Arbitration Association, the parties agree to commence such mediation within thirty (30) days of filing of the request. Either party may terminate the mediation at any time after the first session, but the decision to terminate must be delivered in person to the other party and the mediator. Engaging in mediation is a condition precedent to any other form of binding dispute resolution.

9. **Correction of Defects.** All materials shall be new and both workmanship and materials shall be of good quality and shall conform to the Contract Documents. If any defect in workmanship or material in the Subcontract Work appears within twelve months after the completion of work, or within any longer period specified in the contract documents, the Subcontractor shall correct the defect at the Subcontractor's expense, and if the Subcontractor fails to do so, the Contractor may correct the defect and recover from the Subcontractor the cost incurred by the Contractor in doing so, including a reasonable allowance for the Contractor's overhead and administration. The duration of the guarantee of roofing or other special

9

guarantees shall be in accordance with the Contract Documents.

    10. **Taxes**. The Subcontractor shall pay direct to the governing body, all Sales Taxes, Use Taxes, Occupational Taxes, Excise Taxes, Old Age Benefit, Unemployment Compensation Taxes, or similar levies on all material, labor, tools and equipment furnished under this Agreement, whether required by federal, state, or local law. All such taxes or levies are included in the Subcontractor's price and are to be paid by the Subcontractor. Any records maintained by Subcontractor appertaining to the taxes and levies itemized in this paragraph shall be available to the Contractor or his designated representative, on request.

    11. **Termination**. (a) Should the Owner terminate its contract with the Contractor or any part which includes the Subcontract Work, the Contractor shall notify the Subcontractor in writing within three (3) days of the termination and upon written notification, this Agreement shall be terminated and the Subcontractor shall immediately stop the Subcontract Work, follow all of the Contractor's instructions, and mitigate all costs. In the event of Owner termination, the Contractor's liability to the Subcontractor shall be limited to the extent of the Contractor's recovery on the Subcontractor's behalf under the Subcontract Documents. The Contractor agrees to cooperate with the Subcontractor, at the Subcontractor's expense, in the prosecution of any Subcontractor claim arising out of the Owner termination and to permit the Subcontractor to prosecute the claim, in the name of the Contractor, for the use and benefit of the Subcontractor, or assign the claim to the Subcontractor.

    (b)    If the Subcontractor refuses or fails to supply enough properly skilled workers, proper materials, or maintain the Project Schedule, or fails to make prompt payment to its workers, subcontractors or suppliers, or disregards laws, ordinances, rules, regulations or orders of any public authority having jurisdiction, or otherwise is guilty of a material breach of a provision of this Agreement, the Subcontractor shall be deemed in default of this Agreement. If the Subcontractor fails within three (3) days after written notification to commence and continue satisfactory correction of the default with diligence and promptness, then the Contractor without prejudice to any other rights or remedies, shall have the right to any or all of the following remedies:

        (i) the Contractor may supply workers, materials, equipment and facilities as the Contractor deems necessary for the completion of the Subcontract Work or any part which the Subcontractor has failed to complete or perform after written notification, and charge the cost, including reasonable overhear, profit, attorneys' fees, costs and expenses to the Subcontractor;

        (ii) the Contractor may contract with one or more additional contractors to perform any part of the Subcontract Work that the Contractor determines will provide the most expeditious completion of the Work and charge the cost to the Subcontractor; and/or

        (iii) the Contractor may withhold any payments due or become due the Subcontractor pending corrective action in amounts sufficient to cover losses and compel performance to the extent required by and to the satisfaction of the Contractor.

    (c)    In the event of an emergency affecting the safety of persons or property, the Contractor may proceed as above without notice, but the Contractor shall give the Subcontractor notice promptly after the fact as a precondition of cost recovery.

    (d)    If the Subcontractor fails to commence and satisfactorily continue correction of a default within three (3) days after written notification, then the Contractor may, in lieu of or in addition to the rights provided in subparagraph b (ii) above, issue a second written notification to the Subcontractor and its surety, if any. The notice shall state that if the Subcontractor fails to commence and continue correction of a default within seven (7) days of written notification, the Agreement will be deemed terminated. A written notice of termination shall be issued by the Contractor to the Subcontractor at the time the Subcontractor is terminated. The Contractor may furnish those materials, equipment and/or employs such workers or subcontractors as the Contract deems necessary to maintain the orderly progress of Work. All costs incurred by the Contractor in performing the Subcontract Work, including reasonable overhead, profit and attorney's fees, costs and expenses, shall be deducted from any moneys due or to become due the Subcontractor. The Subcontractor

shall be liable for the payment of any amount by which such expenses may exceed the unpaid balance of the Subcontract Amount. At the Subcontractor's request, the Contractor shall provide a detailed accounting of the costs to finish the Subcontract Work.

(e)    If the Contractor performs work under this Article, either directly or through other subcontractors, the Contractor or other subcontractors shall have the right to take and use any materials, implements, equipment, appliances or tools furnished by, or belonging to the Subcontractor and located at the Project site for the purpose of completing any remaining Subcontract Work. Immediately upon completion of the Subcontract Work, any remaining materials, implements, equipment, appliances or tools not consumed or incorporated in performance of the Subcontract Work, and furnished by, belonging to, or delivered to the Project by or on behalf of the Subcontractor, shall be returned to the Subcontractor in substantially the same condition as when they were taken, normal wear and tear excepted.

(f)    (i) If the Subcontractor files a petition under the Bankruptcy Code, this Agreement shall terminate if the Subcontractor or the Subcontractor's trustee rejects the Agreement or, if there has been a default, the Subcontractor is unable to give adequate assurance that the Subcontractor will perform as required by this Agreement or otherwise is unable to comply with the requirements for assuming this Agreement under the applicable provisions of the Bankruptcy Code.

(ii)    If the Subcontractor is not performing in accordance with the Progress Schedule at the time a petition in bankruptcy is filed, or at any subsequent time, the Progress Schedule at the time a petition in bankruptcy is filed, or at any subsequent time, the Contractor, while awaiting the decision of the Subcontractor or its trustee to reject or to assume this Agreement and provide adequate assurance of its ability to perform, may avail itself of such remedies under this Article as are reasonably necessary to maintain the Progress Schedule. The Contractor may offset against the sums due or become due the Subcontractor all costs incurred in pursuing any of the remedies provided including, but not limited to, reasonable overhead, profit and attorneys' fees. The Subcontractor shall be liable for the payment of any amount by which costs incurred may exceed the unpaid balance of the Subcontract Price.

(g)    Should the Owner suspend the Work or any part which includes the Subcontract Work and such suspension is not due to any act or omission of the Contractor, or any other person or entity for whose acts or omissions the Contractor may be liable, the Contractor shall notify the Subcontractor in writing and upon receiving notification the Subcontractor shall immediately suspend the Subcontract Work. In the event of Owner suspension, the Contractor's liability to the Subcontractor shall be limited to the extent of the Contractor's recovery on the Subcontractor's behalf under the Subcontract Documents. The Contractor agrees to cooperate with the Subcontractor, at the Subcontractor's expense, in the prosecution of any Subcontractor claim arising out of an Owner suspension and to permit the Subcontractor to prosecute the claim, in the name of the Contractor, for the use and benefit of the Subcontractor.

(h)    Any contingent assignment of this Agreement to the Owner which may be provided for in the General Contract is effective when the Owner has terminated the General Contract for cause and has accepted the assignment by notifying the Subcontractor in writing. This contingent assignment is subject to the prior rights of a surety that may be obligated under the Contractor's bond, if any. Subcontractor consents to such assignment and agrees to be bound to the assignee by the terms of this Agreement, provided that the assignee fulfills the obligations of the Contractor.

(i)    The Contractor may order the Subcontractor in writing to suspend all or any part of the Subcontract work for such period of time as may be determined to be appropriate for convenience of the Contractor. Phased Work or interruptions of the Subcontract Work for short periods of time shall not be considered a suspension. The Subcontractor, after receipt of the Contractor's order, shall notify the Contractor in writing in sufficient time to permit the Contractor to provide timely notice to the Owner in accordance with the Owner-Contractor agreement of the effect of such order upon the Subcontract Work. The Subcontract Amount or Progress Schedule shall be adjusted by Subcontract Change Order for any increase in the time or cost of performance of this Agreement caused by such suspension. No claim under this Paragraph

11

shall be allowed for any costs incurred more than fourteen (14) days prior to the Subcontractor's notice to the Contractor. Neither the Subcontract Amount nor the Progress Schedule shall be adjusted for any suspension, to the extent that performance would have been suspended, due in whole or in part to the fault or negligence of the Subcontractor or by a cause for which Subcontractor would have been responsible. The Subcontract Amount shall not be adjusted for any suspension to the extent that performance would have been suspended by a cause for which the Subcontractor would have been entitled only to a time extension under this Agreement.

(j)    If the Contractor wrongfully exercises any option under this section, the Contractor shall be liable to the Subcontractor solely for the reasonable value of the Subcontract Work performed by the Subcontractor prior to the Contractor's wrongful action, including reasonable overhead and profit on the Subcontract Work performed, less prior payments made, together with reasonable overhead and profit on the Subcontract work not executed, and other costs incurred by reason of such action.

(k)    If the Subcontract Work has been stopped for thirty (30) days because the Subcontractor has not received progress payments or has been abandoned or suspended for an unreasonable period of time not due to the fault or neglect of the Subcontractor, then the Subcontractor may terminate this Agreement upon giving the Contractor seven (7) days' written notice. Upon such termination, Subcontractor shall be entitled to recover from the Contractor payment for all Subcontract Work satisfactorily performed but not yet paid for, including reasonable overhead, profit and attorneys' fees, costs and expenses, provided tat the Subcontractor has otherwise complied with the provisions of this agreement. The Contractor's liability for any other damages claimed by the Subcontractor under such circumstances shall be extinguished by the Contractor pursing a claim for the damages against the Owner, on the Subcontractor's behalf, in the manner provided for in this Agreement.

13. **Liens and Encumbrances.** The Subcontractor shall turn the Subcontract Work over to the Owner in good condition and free and clear from all claims, encumbrances and liens for labor and material and shall indemnify the Contractor and the Owner against and hold them harmless from all claims, encumbrances and liens growing out of the performance of this Agreement, and in the event of the failure of the Subcontractor during the progress of the work, or at any subsequent time, to pay for all materials and labor used in the prosecution of the work, the Contractor may, at his option, and with five (5) days notice to the Subcontractor, pay all such claims for labor and materials and charge the amounts to the Subcontractor. In case suit to establish a lien is brought by any person, firm or corporation employed by or furnishing material to Subcontractor under this Agreement, Subcontractor will, at its own expense (including attorney's fee) defend such suit and pay any such lien established in court. With each request for payment, at such other times as the Contractor may request, and otherwise as required under this Agreement, the Subcontractor shall provide the Contractor a sworn statement of persons furnishing labor or materials to the Subcontractor, giving their names and how much, if any, is due or will be due each, and shall submit waivers of lien to the extent of the payment received, each waiver having been executed by the appropriate material supplier or labor supplier.

14. **Worksite Condition.** The Subcontractor at all times shall keep the worksite free from accumulation of waste materials or rubbish caused by its operations. At the completion of the Work it shall remove all of its waste materials and rubbish from and about the Project as well as all of its tools, construction equipment, machinery and surplus materials. If the Subcontractor fails to clean up, the Contractor may do so and the cost thereof shall be charged to the Subcontractor. If a dispute arises between the separate Subcontractors as to their responsibility for cleaning up, the Contractor may clean up and charge the cost of doing so to the Subcontractors in proportions determined by the Contractor to be reasonable.

15. **Progress Payments.** (a)    Subject to the receipt of payments from the Owner, the Contractor shall pay the Subcontractor the Subcontract Amount in progress payments. The Subcontractor's applications for payment shall be itemized and supported by substantiating data as required by the Subcontract Documents. If the Subcontractor is obligated to provide design services, Subcontractor's applications for

payment shall show the Designer's fee and expenses as a separate cost item. The Subcontractor's application shall be notarized. The Subcontractor's progress payment application for Subcontract Work performed in the preceding payment period shall be submitted for approval of the Contractor in accordance with the schedule of values if required and the applicable provisions of this Agreement. The Contractor shall incorporate the approved amount of the Subcontractor's progress payment application to the Contractor's payment application to the Owner for the same period and submit it to the Owner in a timely fashion. The Contractor shall immediately notify the Subcontractor of any changes in the amount requested on behalf of the Subcontractor.

      (b)     The rate of retainage shall be ten percent (10%) which is equal to the percentage retained from the Contractor's payment by the Owner for the Subcontract Work.  If the Subcontract Work is satisfactory and the Subcontract Documents provide for reduction of retainage at a specific percentage of completion, the Subcontractor's retainage shall also be reduced when the Subcontract Work has attained the same percentage of completion and the Contractor's retainage for the Subcontract Work has been so reduced by the Owner.

      (c)     The Subcontractor shall submit progress payments applications to the Contractor no later than the 20th day of each payment period for the Subcontract Work performed up to and including the 30th day of the payment period indicating work completed and, to the extent allowed under the following subparagraph, materials suitably stored during the preceding payment period.

      (d)     Unless otherwise provided in the Subcontract Documents, and if approved in advance by the Owner, applications for payment may include materials and equipment not incorporated in the Subcontract Work but delivered to and suitably stored at the site or at some other location agreed upon in writing. Approval of payment applications for such stored items on or off the site shall be conditioned upon submission by the Subcontractor of bills of sale and applicable insurance or such other procedures satisfactory to the Owner and Contractor to establish the Owner's title to such materials and equipment, or otherwise to protect the Owner's and Contractor's interest including transportation to the site.

      (e)     Receipt of payment by the Contractor from the Owner for the Subcontract Work is a condition precedent to payment by the Contractor to the Subcontractor. The Subcontractor acknowledges that it relies on the credit of the Owner, not the Contractor for payment of Subcontract Work. Notwithstanding any other provisions of this Agreement to the contrary, no Progress Payments shall be payable until the contractor has been paid by the Owner for the Subcontract Work in question.- The Contractor shall pay progress payments to the Subcontractor for satisfactory performance of the Subcontract Work no later than seven (7) days after the Contractor has received payment from the Owner for the Subcontract Work at issue in the progress payment and all documentation required of the Subcontractor under his agreement.

      (f)     If the Contractor has received payment from the Owner and if for any reason not the fault of the Subcontractor, the Subcontractor does not receive a progress payment from the Contractor within seven (7) days after the date such payment is due, the Subcontractor, upon giving seven (7) days' written notice to the Contractor, and without prejudice to an in addition to any other legal remedies, may stop work until payment of the full amount owing to the Subcontractor has been received.  The Subcontract Amount and Project Schedule shall be adjusted by the amount of the Subcontractor's reasonable and verified cost of shutdown, delay, and startup, which shall be effected by an appropriate Subcontractor Change Order.

      (g)     The Contractor may reject a Subcontractor payment application or nullify a previously approved Subcontractor payment application, in whole or in part, as may reasonably be necessary to protect the Contractor from loss or damage based upon:

          (i)     the Subcontractor's repeated failure to perform the Subcontract work as required by this Agreement;

          (ii)     loss or damage arising out of or relating to this Agreement and caused by the Subcontractor to the Owner, Contractor, or others to whom the Contractor may be liable;

          (iii)     the Subcontractor's failure to properly pay for labor, materials, equipment or supplies

13

furnished in connection with the Subcontract Work;

        (iv)      rejected, nonconforming or defective Subcontract Work which has not been corrected in a timely fashion;

        (v)      reasonable evidence of delay in performance of the Subcontract Work such that the Work will not be completed within the Subcontract Time, and that the unpaid balance of the Subcontract Amount is not sufficient to offset the liquidated damages or actual damages that may be sustained by the Contractor as a result of the anticipated delay caused by the Subcontractor;

        (vi)      reasonable evidence demonstrating that the unpaid balance of the Subcontract Amount is insufficient to cover the cost to complete the Subcontract work;

        (viii)   third party claims involving the Subcontractor or reasonable evidence demonstrating that third party claims are likely to be filed unless and until the Subcontractor furnishes the Contractor with adequate security in the form of a surety bond, letter of credit or other collateral or commitment which are sufficient to discharge such claims if established.

        (h)      The Contractor shall give written notice to the Subcontractor, at the time of disapproving or nullifying an application for payment stating its specific reasons for such disapproval or nullification. When the above reasons for disapproving or nullifying an application for payment are removed, payment will be made for amounts previously withheld.

        16.   **Final Payment.** (a) Upon acceptance of the Subcontract Work by the Owner and the Contractor and receipt from the Subcontractor of evidence of fulfillment of the Subcontractor's obligations in accordance with the Subcontract Documents, the Contractor shall incorporate the Subcontractor's application for final payment into the Contractor's next application for payment to the Owner without delay, or notify the Subcontractor if there is a delay and the reasons for it. Before the Contractor is required to incorporate the Subcontractor's application for final payment into the Contractor's next application for payment, the Subcontractor shall submit to the Contractor:

        (i)      an affidavit that all payrolls, bills for materials and equipment, and other indebtedness connected with the Subcontract Work for which the Owner or its property or the Contractor or the Contractor's surety might in any way be liable, have been paid or otherwise satisfied;

        (ii)      consent of surety to final payment, if required;

        (iii)    satisfaction of required closeout procedures;

        (iv)    certification that insurance required by the Subcontract documents to remain in effect beyond final payment is in effect and will not be cancelled or allowed to expire without at least thirty (30) days' written notice to the Contractor unless a longer period is stipulated in this Agreement;

        (v)      other data, if required by the Contractor or Owner, such as receipts, releases, and waivers of liens to the extent and in such form as may be designed by the Contractor or Owner;

        (vi)     written warranties, equipment manuals, and confirmation of startup and testing; and

        (vii)    as-built drawings if required by the Subcontract Documents.

        (b)      Receipt of final payment by the Contractor from the Owner for the Subcontract work is a condition precedent to payment by the Contractor to the Subcontractor. The Subcontractor hereby acknowledges that it relies on the credit of the Owner, not the Contractor for payment of Subcontract Work. Final payment of the balance due of the Contract Price shall be made to the Subcontractor:

        (i)      upon receipt of the Owner's waiver of all claims related to the Subcontract work except for unsettled liens, unknown defective work, and non-compliance with the Subcontract Documents or warranties; and

        (ii)     within seven (7) days after receipt by the Contractor of final payment from the Owner for such Subcontract Work.

        (c)      Final payment shall constitute a waiver of all claims by the Subcontractor relating to the Subcontract Work, but shall in no way relieve the Subcontractor of liability for the obligations assumed under Paragraphs 3 and 4, or for faulty or defective work or services discovered after final payment.

14

17.   **Payment Provisions.** (a)      To the extent obtained by the Contractor under the Subcontract Documents, progress payments or final payment due and unpaid under this Agreement shall bear interest from the date payment is due at the rate provided in the Subcontract Documents. If the Owner or its designated agent does not issue a payment or the Contractor does not receive such payment for any cause which is not the fault of the Subcontractor, the Contractor shall promptly inform the Subcontractor in writing. The Contractor shall also diligently pursue, with the assistance of the Subcontractor, the prompt release by the Owner of each payment due for the Subcontract work. At the Subcontractor's request and expense, to the extent agreed upon in writing, the Contractor shall institute reasonable legal remedies to mitigate the damages and pursue payment of the Subcontractor's final payment including interest.

(b)      Provided the Contractor is making payments on or has made payments to the Subcontractor in accordance with the terms of this Agreement, the Subcontractor shall reimburse the Contractor for any costs and expenses for any claim, obligation or lien asserted before or after final payment is made that arises from the performance of the Subcontract Work. The Subcontractor shall reimburse the Contractor for costs and expenses including attorneys' fees and costs and expenses incurred by the Contractor in satisfying, discharging or defending against any such claims, obligation or lien including any action brought or judgment recovered. In the event that any applicable law, statute, regulation or bond requires the Subcontractor to take any action prior to the expiration of the reasonable time for payment provided for in this agreement in order to preserve or protect the Subcontractor's rights, if any, with respect to mechanic's lien or bond claims, then the Subcontractor may take that action prior to the expiration of the reasonable time for payment and such action will not create the reimbursement obligation recited above nor be in violation of this Agreement or considered premature for purposes of preserving and protecting the Subcontractor's rights.

(c)      Payments received by the Subcontractor shall be used to satisfy the indebtedness owed by the Subcontractor to any person furnishing labor or materials, or both, for use in performing the Subcontract work through the most current period applicable to progress payments received from the Contractor before it is used for any other purpose. In the same manner, payments received by the Contractor from the Owner for the Subcontract Work shall be dedicated to payment to the Subcontractor. The provision shall bear on this Agreement only, and is not for the benefit of third parties. Moreover, it shall not be construed by the parties to this Agreement or third parties to require that dedicated sums of money or payments be deposited in separate accounts, or that there be other restrictions on commingling of funds. Neither shall these mutual covenants be construed to create any fiduciary duty on the Subcontract or Contractor, nor create any tort cause of action or liability for breach of trust, punitive damages, or other equitable remedy or liability for alleged breach.

(d)      If the Contractor has reason to believe that the Subcontractor is not complying with the payment of terms of this Agreement, the Contractor shall have the right to contact the Subcontractor's subcontractors and suppliers and suppliers to ascertain whether they are being paid by the Subcontractor in accordance with this Agreement.

(e)      As a prerequisite for payments, the Subcontractor shall provide, in a form satisfactory to the Owner and Contractor, partial lien or claim waivers in the amount of the application for payment and affidavits covering its subcontractors and suppliers for completed Subcontract Work. Such waivers may be conditional upon payment. In no event shall Contractor require the Subcontractor to provide an unconditional waiver of lien or claim, either partial or final, prior to receiving payment or in amount in excess of what it has been paid.

(f)      Upon payment by the Contractor, the Subcontractor shall promptly pay its subcontractors and suppliers the amounts to which they are entitled. In the event the Contractor has reason to believe that labor, material or obligations incurred in the performance of the Subcontract Work are not being paid, the Contractor may give written notice of a potential claim or lien to the Subcontractor and may take steps deemed necessary to assure that progress payments are utilized to pay such obligations, including but not limited to the issuance of joint checks. If upon receipt of notice, the Subcontractor does not (a) supply evidence to the satisfaction of the Contractor that the moneys owing have been paid; or (b) to post a bond

15

indemnifying the Owner, the Contractor, the Contractor's surety, if any, and the premises from a claim or lien, the Contractor shall have the right to withhold from any payments due or to become due to the Subcontractor a reasonable amount to protect the Contractor from any and all loss, damage or expenses including attorneys' fees that may arise out of or relate to any such claim or lien.

(g)    The Subcontractor shall not assign any moneys due or to become due under this Agreement, without the written consent of the Contractor, unless the assignment is intended to create a new security interest within the scope of Article 9 of the Uniform Commercial Code. Should the Subcontractor assign all or any part of any moneys due or become due under this Agreement to create a new security interest or for any other purpose, the instrument of assignment shall contain a clause to the effect that the assignee's right in and to any money due or to become due to the Subcontractor shall be subject to the claims of all persons, firms and corporations for services rendered or materials supplied for the performance of the Subcontract Work.

(h)    Payment to the Subcontractor does not constitute or imply acceptance of any portion of the Subcontract Work.

18.    **Entire Agreement.**    This Agreement constitutes the entire agreement between the parties and all previous agreements and negotiations, whether oral or written, relating to the subject matter herein are merged herein and, except as herein stated, are declared to be null and void. If there is any conflict between the provisions of this Agreement and the Contract Documents, the provisions more onerous to the Subcontractor shall control and anything herein required of the Subcontractor not required of the Contractor by the Contract Documents shall nevertheless be the obligation of the Subcontractor to the Contractor hereunder.

19.    **Relationships.**    Nothing in this Agreement shall be construed to create a contractual relationship between persons or entities other than the Contractor and Subcontractor. This Agreement is solely for the benefit of the parties.

20.    **Assignment.**    The Subcontractor shall not sell, assign, sublet, transfer or set over this Agreement or any part of it or any money due or to become due under this agreement without the written consent of the Contractor. The Contractor's consent to any such transfer shall not relieve the Subcontractor from any of its obligations under this Agreement, and any transferee, assignee, or subcontractor shall be considered the agent of the Subcontractor and, as between the Contractor and the Subcontractor, the Subcontractor shall remain liable as if no such transfer had been made. Any transfer made in violation of the provisions of this agreement shall not be binding on the Contractor. Subject to the preceding provisions of this paragraph, this Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and permitted assigns.

21.    **Amendments.**    This Agreement may be modified only by an agreement in writing by the parties. The Waiver of any term or condition of this Agreement by a party hereto shall not be construed as a waiver of any subsequent breach or waiver of the same term or condition by such party, or a waiver of any other term or condition of this Agreement by such party. The failure of any party to assert any of its rights shall not constitute a waiver of any such rights.

22.    **Governing Law and Jurisdiction.** THE EXECUTION, INTERPRETATION, AND PERFORMANCE OF THIS AGREEMENT SHALL BE GOVERNED BY THE LAW OF THE STATE OF ILLINOIS (EXCLUDING ANY CONFLICTS OF LAWS PRINCIPLES). ANY LEGAL ACTION OR PROCEEDING WITH RESPECT TO THIS AGREEMENT MAY BE BROUGHT IN THE COURTS OF THE STATE OF ILLINOIS OR OF THE UNITED STATES OF AMERICA LOCATED IN CHICAGO, ILLINOIS, AND BY EXECUTION AND DELIVERY OF THIS AGREEMENT, EACH OF THE PARTIES CONSENT, FOR ITSELF AND IN RESPECT OF ITS PROPERTY, TO THE NON-EXCLUSIVE JURISDICTION OF THOSE COURTS. EACH OF THE PARTIES IRREVOCABLY WAIVES ANY OBJECTION, INCLUDING ANY OBJECTION TO THE LAYING OF VENUE OR BASED ON THE GROUNDS OF FORUM NON CONVENIENS, WHICH IT MAY NOW OR

HEREAFTER HAVE TO THE BRINGING OF ANY ACTION OR PROCEEDING IN SUCH JURISDICTION IN RESPECT OF THIS AGREEMENT OR ANY DOCUMENT RELATED HERETO.

23.    **Control.**    The Contractor shall not have the power or authority to direct or control the Subcontractor in the means, methods or manner of performance of the work. The Subcontractor in carrying out the terms of this Agreement is acting independently and as an independent contractor with the full power and authority and responsibility to select means, methods and manner of performing the work.

24.    **Notices.** All notices, demands, consents or other communications to be given or delivered under or by reason of the provisions of this Agreement will be in writing (including facsimile). Such notices, demands, consents and other communications will be sent to Buyer and Seller at the respective addresses indicated in the caption to this Agreement, or such other address or facsimile number as such party may subsequently specify for the purpose by notice to the other parties. Each such notice, request or other communication shall be effective (i) if given by facsimile, when such facsimile is transmitted to the facsimile number specified above and the appropriate facsimile confirmation is received or (ii) if given by any other means, when delivered at the address specified in this paragraph.

25.    **Severability.** In the event that any of the provisions of this Agreement are held to be unenforceable by a court or arbitrator, the remaining portions of the Agreement will remain in full force and effect.

26.    **Counterparts.** This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which shall constitute one and the same instrument.

27.    **Headings**   The section headings in this Agreement are for convenience of reference only and shall not be deemed to alter or affect the meaning or interpretation of any provision hereof.

28.    **Effective Date.** It is the intention of the parties to this contract that all the provisions of this Agreement apply from the commencement of any work by the Subcontractor regardless of the date of the execution of this Agreement.

IN WITNESS WHEREOF, the parties hereto executed this Agreement the day and year first above written.


COUNTRYSIDE INDUSTRIES, INC.                RAGNAR BENSON CONSTRUCTION, LLC


_____                 _____
Signature

_____                 MARTYN J. GUIMON
Print Name

_____                 PRESIDENT
Title

_____                 _____
Date                                         Date

(Seal)

Witnessed by:                                Witnessed by:


_____                 _____


17

## Paul Paolini

| | |
|---|---|
| **From:** | Lee Keenan [lkeenan@countrysideindustries.com] |
| **Sent:** | Thursday, November 29, 2007 8:23 AM |
| **To:** | Paul Paolini |
| **Cc:** | Cindy Barrett |
| **Subject:** | Arboretum Billing Value |

Per our conversation, the following are the two items we have completed to date. The seeding is complete and we have completed roughly $130,000.00 worth of irrigation sleeving. The seeding breakout is attached below and is part of our proposal. The total value we are looking to be paid on this application is; $159,050.40.

## PARK DISTRICT SITE

| | | | |
|---|---|---|---|
| Bluegrass Seeding | 164,190.00 SF | $ 0.16 | $ 26,270.40 |
| *Immediate Completion* | | | |
| Watering (6) times (Park area only) | 3.80 AC | 600.00 | 2,280.00 |
| Rock Removal | 1.00 LS | | 2,500.00 |

Lee Keenan
Vice President of Purchasing and Production
Countryside Industries, Inc.
29947 North Rand Road
Wauconda, IL 60084

Phone: 847/526-1909
Fax: 847/526-9094

Visit us at www.countrysideindustries.com



BLUE GROSS SEEDING    26 270
WATERING    2280
Rock Removol    2500
IRRIGATION SLEEVES    130,000
TOTAL    161, 050


**Landscape Architects & Contractors**

**E-MAIL CONFIDENTIALITY NOTICE:** The contents of this e-mail message and any attachments are intended solely for the addressee(s) and may contain confidential and/or legally privileged information. If you are not the intended recipient of this message or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and any attachments. If you are not the intended recipient, you are notified that any use, dissemination, distribution, copying, or storage of this message or any attachment is strictly prohibited.

1/25/2008

# Ragnar Benson Construction, LLC.

100 W. Higgins Road

South Barrington, IL 60010

Phone: 847-428-9382
Fax: 847-428-1576

**CHANGE ORDER**

**No. 00001**

**TITLE:** CM 355 Landscape GMP C.O.

**DATE:** 4/10/2008

**PROJECT:** Arboretum of South Barrington

**JOB:** 4146

**TO:** Attn: Lee Keenan
Countryside Industries
29947 North Rand Road
Wauconda, IL 60084
Phone: 847-526-1909  Fax: 847-526-9094

**CONTRACT NO:** 4146-05-001

| RE: | To: | From: | Number: |
|-----|-----|-------|---------|

**DESCRIPTION OF CHANGE**

This change order is written for the Phase 1 landscaping, irrigation, well system retaining walls, and pavers for snow removal.

| Item | Description | Stock# | Quantity | Units | Unit Price | Tax Rate | Tax Amount | Net Amount |
|------|-------------|--------|----------|-------|-----------|----------|-----------|-----------|
| 00001 | Contract Amount for Phase 1 | | 1.000 | | $3,508,602.00 | 0.00% | $0.00 | $3,508,602.00 |
| 00002 | Allowance for earthwork associated with retaining walls | | 1.000 | | $6,000.00 | 0.00% | $0.00 | $6,000.00 |
| 00003 | Credit for original contract amount. This work is included in the GMP | | 1.000 | | ($161,050.00) | 0.00% | $0.00 | ($161,050.00) |

**Unit Cost:** $3,353,552.00

**Unit Tax:** $0.00

**Total:** $3,353,552.00

*Matches our 1st Billing*

| | |
|---|---|
| The Original Contract Sum was | $161,050.00 |
| Net Change by Previously Authorized Requests and Changes | $0.00 |
| The Contract Sum Prior to This Change Order was | $161,050.00 |
| The Contract Sum Will be Increased | $3,353,552.00 |
| The New Contract Sum Including This Change Order | $3,514,602.00 |
| The Contract Time Will Not Be Changed | |
| The Date of Substantial Completion as of this Change Order Therefore is | |

**ACCEPTED:**

Countryside Industries

By: _____
Lee Keenan

Date: _____

Ragnar Benson Construction, LLC

By: _____
Paul Paolini

Date: _____

By: _____

Date: _____