**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **Countryside Industries, Inc.,** | |
| Plaintiff, | |
| v. | No. 1:08-cv-03108 |
| **Construction & General Laborers' District Council of Chicago and Vicinity; and Laborers' International Union Local 118,** | Hon. Judge Manning Magistrate Judge Keys |
| Defendants. | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO FILE THIRD-PARTY COMPLAINT

Plaintiff, Countryside Industries, Inc. ("Countryside"), hereby responds in opposition to the Defendant Unions' "Motion to file Third-Party Complaint." As explained in detail below, the Defendants' proposed Third-Party Complaint does not state any claim. Rather, Defendants' Motion is merely a bullying tactic aimed at harassing Countryside's customers and forcing Countryside to drop its Complaint rather than inconvenience those customers.

### I.      RELEVANT BACKGROUND FACTS

Countryside is a landscaping contractor serving the greater Chicago area. (Keenan Decl. ¶ 2, attached as Exhibit A). Countryside's employees are represented by Local 150 of the Operating Engineers Union ("Local 150") and Teamsters Local 703 ("Teamsters"). (*Id.* ¶ 3). There is a longstanding dispute between these unions and the Defendants over which union should represent employees doing landscaping work in the area. (*Id.* ¶ 4). Countryside has no employees represented by the Defendants. (*Id.* ¶ 5).

In 2006, Countryside began working on a project known as "The Arboretum," a shopping

complex being built in South Barrington, Illinois. (*Id.* ¶ 6). The Arboretum is a project under development by The Arboretum, LLC. (*Id.* ¶ 7). Ultimately, Ragnar Benson was selected by The Arboretum, LLC as one of many general contractors at the Arboretum project. (*Id.* ¶ 8). Ragnar Benson entered into a contract with Countryside to do landscaping work (which did not include the installation of brick pavers) at the Arboretum. (*Id.* ¶ 9). Additionally, the Arboretum contracted directly with Countryside to install brick pavers at the Arboretum. (*Id.* ¶ 10).

On March 24, 2008, Defendants sent a letter to Ragnar Benson demanding that Countryside be removed from the Arboretum jobsite. (*Id.* ¶ 11). Thereafter, following increased threats to Ragnar Benson and the Arboretum, the Defendants picketed the Arboretum jobsite on May 19, 2008, effectively shutting down any and all work occurring there. (*Id.* ¶ 12). To avoid further picketing, and since the Defendants refused to give any assurances that there would be no further picketing, Countryside was removed from the jobsite for several weeks. (*Id.* ¶ 13).

Countryside filed an unfair labor practice charge with Region 13 of the National Labor Relations Board, stating that Defendants had violated 8(b)(4) of the National Labor Relations Act ("NLRA") by (1) engaging in secondary threats and picketing; and (2) engaging in picketing for the purpose of forcing Ragnar Benson and the Arboretum to assign landscaping work to employees represented by the Defendants rather than to Countryside. (*Id.* ¶ 14). The Region found merit in these Charges. With regard to the secondary picketing Charge, the Region was about to issue complaint when the Defendants agreed to settle the matter. The settlement agreement is attached hereto as Exhibit B. With regard to the picketing to force Ragnar Benson and the Arboretum to reassign work, the Region was forced to file a lawsuit in this District and seek injunctive relief against the Defendants in *Barker v. Laborers International Union, Local 118*, 08-CV-3412 (N.D. Ill., Judge Anderson). On June 13, 2008, the Region petitioned the court

for a temporary injunction against the Defendants under Section 10(l) of the NLRA. *Id.* at Docket #4. Ultimately, the Defendants purported to disclaim the relevant landscaping work in an agreement with the NLRB, stating "Laborers Local 118 will not picket at the Arboretum regarding Countryside performing landscape work." (Exhibit C). This formed the basis of the Region's settlement of the Region's lawsuit. (Exhibit C).

In the meantime, Countryside had filed the present lawsuit seeking damages from the Defendants' illegal picketing. Now, however, the Defendants have filed the instant Motion seeking to bring claims against Ragnar Benson and the Arboretum. Defendants do so, having already settled claims for their illegal picketing with the NLRB, and having already allegedly disclaimed the relevant work at the Arboretum. The Defendants' clear intent is to put pressure on Countryside to drop this lawsuit by harassing Countryside's customers, and to influence those customers (and others in the area) not to do business with Countryside in the future.

## II.    ARGUMENT

### A.    Standard On Motion To Amend

Under Rule 15, a court may deny leave to add an additional claim where such a claim would be futile. *Bethany Pharmacal Co. v. QVC, Inc.*, 241 F.3d 854, 860-61 (7th Cir.2001); *Rodriguez v. U.S.*, 286 F.3d 972, 980-81 (7th Cir. 2002); *Rose v. Hartford Underwriters Insurance Co.,* 203 F.3d 417, 420 (6th Cir. 2000) (proposed amendment is futile if it cannot withstand motion to dismiss under Rule 12(b)(6)). Defendants should not be allowed leave to file because their proposed Third-Party Complaint is futile and could not withstand a motion to dismiss under Rule 12(b)(6).

### B.    Defendants' Proposed Third-Party Complaint Fails To State A Claim

To say the least, Defendants' proposed Third-Party Complaint is difficult to follow. However, as best Countryside can tell, Defendants purport to bring claims against Ragnar

Benson and the Arboretum for "conspiracy to commit fraud against the Union." (Defs' Third Party Compl. ¶ 25). It seems that Defendants claim that Ragnar Benson, the Arboretum, and Countryside somehow conspired to defraud the Defendants, causing them to incur "attorneys' fees and costs in defending the charge at the NLRB and this lawsuit that was filed by Countryside against the Laborers' union." (Defs' Third Party Compl. ¶ 28). Of course, any pleading making an averment of fraud is governed by the heightened pleading standards of FRCP 9(b). *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007).

**1.    Defendants' Allegations "On Information And Belief" Are Improper In Pleading Fraud**

The futility of Defendants' proposed Complaint is clear from the fact that practically all of their material allegations are made in conclusory fashion, "on information and belief." (Defs' Third-Party Compl. ¶¶ 16-17). Indeed, the very falsity of the allegedly "fraudulent" statement, as well as Defendants' entire "conspiracy" theory, are alleged "on information and belief." *Id.* As the Seventh Circuit has explained, such "information and belief" allegations are "clearly improper" in pleading fraud under to Rule 9(b). *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683-84 (7th Cir. 1992). This is especially true given that the Defendants in the present case have utterly failed to plead any grounds for their apparent suspicions of wrongdoing. *Id.*

**2.    Defendants Have Not Properly Alleged The Elements Of Fraud**

Even if Defendants had anything more than mere "belief" of wrongdoing, their proposed Complaint fails to allege the elements of fraud. A complaint alleging fraud must provide the specifics of the "who, what, when where, and how." *Id.* The Seventh Circuit Court of Appeals recently listed the elements of fraud as:

> "(1) a false statement of material fact;
>
> (2) defendant's knowledge that the statement was false;

(3) defendant's intent that the statement induce the plaintiff to act;

(4) plaintiff's reliance upon the truth of the statement; and

(5) plaintiff's damages resulting from reliance on the statement."

*Tricontinental Industries, ltd. v. Pricewaterhouse-Coopers, LLP*, 475 F.3d 824, 841 (7th Cir. 2007); *See also, Teamsters Local 734 v. Phillip Morris, Inc.*, 34 F.Supp.2d 656, 664 (N.D. Ill. 1998, Hon. Manning). Plaintiff's proposed Third-Party Complaint fails to allege specific facts with respect to these elements.

### a.    False Statement of Material Fact

Defendants' proposed Third-Party Complaint alleges that Ragnar Benson sent Defendants a letter "falsely" claiming that Ragnar Benson had not contracted with Countryside for the installation of brick pavers. However, the Complaint does not allege how or why any statement in this letter was false. Nor have Defendants alleged who from Ragnar Benson knew that this information was supposedly false. Finally, Defendants have failed to allege ***any*** false statement made to them by the Arboretum. Thus, they have simply failed to plead fraud and, should the Defendants be allowed to file their Third Party Complaint, the claim could not possibly survive a 12(b)(6) motion.

### b.    Defendant's Intent that the Statement Induce the Plaintiff to Act

The proposed Third-Party Complaint fails to allege that Ragnar Benson or the Arboretum LLC intended to induce the Defendants to engage in their illegal picketing at the Arboretum jobsite. Indeed, the Complaint does not specify what it was that Ragnar Benson or the Arboretum supposedly intended to induce Defendants to do. Certainly, Defendants do not suggest that the intent was to induce Defendants to picket. This would be nonsensical, given the disruptive effect the picketing had on the job in question. Indeed, the picketing effectively halted

all work on the Arboretum shopping center.  This failure to make some reasonable allegation of intent is fatal to the proposed Third-Party Complaint.  *Hoopla Sports and Entertainment, Inc. v. Nike, Inc.*, 947 F.Supp. 347, 358 (N.D. Ill. 1996) (plaintiff must allege that misrepresentation was made for purpose of causing plaintiff to act); *Fink v. DeClassis*, 745 F.supp. 509, 513 (N.D. Ill. 1990) (same).

### c.    Reliance on the Truth of the Statement

Defendants also fail to allege how they could have relied on the statement "Ragnar Benson did not contract with Countryside for the installation of brick pavers" in later engaging in illegal picketing of the jobsite.  The Defendants' Complaint alleges that:

> In reliance on the statements of Ragnar Benson that they had not subcontracted the work to Countryside, the Union on or about May 16, 2008, *discovered Countryside performing work at the Arboretum worksite and investigated whether Countryside was paying what the laborers assert is their area standard wages* . . . The Union, in reliance upon the claim that Ragnar Benson had not subcontracted work to Countryside, Local 118 [sic], on May 19, 2008, engaged in informational picketing at the Arboretum worksite notifying the public that Countryside did not pay area standard wages.

(Defs' Third-Party Compl. ¶¶ 19-21) (emphasis added).  Thus, Defendants allege that it was their alleged "investigation," not the "fraudulent" statement of Ragnar Benson, that caused them to picket.  *Id.*

Indeed, it would make no sense for Defendants to allege that they engaged in purported "informational picketing" in reliance on Ragnar Benson's statement that they had not contracted for brick pavers with Countryside.  Whether Ragnar Benson contracted with Countryside has absolutely no bearing on whether Countryside was paying "area standard wages," or on whether the Defendants' picketing was lawful "area standards" picketing or illegal picketing as found by NLRB Region 13.  This failure of pleading is fatal to the proposed Third-Party Complaint.

*Derson Group, Ltd. v. Right Management Consultants, Inc.*, 683 F.Supp. 1224, 1231 (N.D. Ill. 1988) (dismissing fraud claim where plaintiff could not allege that defendants' misstatements had caused it to take some affirmative action).

#### d.    Damages Resulting from Reliance on the Statement

Defendants' proposed Complaint also fails to allege any damages resulting from their supposed reliance on Ragnar Benson's statement that they had not contracted with Countryside for the installation of brick pavers.  The only claim of damages in the Third-Party Complaint states that "the Laborers' union has incurred attorneys' fees and costs in defending the charge at the NLRB and this lawsuit that was filed by Countryside against the Laborers' union."  (Defs' Third Party Compl. ¶ 28).  First, as a matter of law, attorney's fees and costs before the NLRB or arising from this lawsuit under § 303 of the LMRA are simply not recoverable.  *Summit Valley Industries Inc. v. Local 112, United Broth. of Carpenters*,  456 U.S. 717, 721-22 (1982).  Second, the attorney's fees expended by the Defendants in their losing effort to defend their illegal picketing before the NLRB can hardly be thrust upon Ragnar Benson or the Arboretum, neither of whom filed any charge with the NLRB and neither of whom filed this lawsuit.

### III.    CONCLUSION

Defendants' attempt to bring a Third-Party Complaint against Countryside's customers, Ragnar Benson and the Arboretum, is simply a tactic to harass those customers.  The Defendants' aim is to force Countryside to dismiss its lawsuit, and to bully Countryside's customers (present and future) not to do business with Countryside in the future for fear of frivolous litigation with the Laborers.  The proposed Third-Party Complaint is futile in that it could not withstand a 12(b)(6) motion.  Therefore, Defendants' Motion should be denied.

Respectfully Submitted,


/s/ David L. Christlieb
                    David L. Christlieb


David L. Christlieb
LITTLER MENDELSON
A Professional Corporation
200 N. LaSalle Street
Suite 2900
Chicago, IL  60601


Dated: August 8, 2008

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 8, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system.  Notification of this filing will be sent electronically from the Clerk of the Court to all parties of record.


<u>/s/ David L. Christlieb</u>
David L. Christlieb
Attorney for Plaintiff

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Countryside Industries, Inc. , <br><br> Plaintiff, <br><br> v. <br><br> Construction & General Laborers' District Council of Chicago and Vicinity; and Laborers' International Union Local 118, <br><br> Defendants. | No. 1:08-cv-03108 <br><br> Hon. Judge Manning |

## DECLARATION OF LEE KEENAN

1.    My name is Lee Keenan, and I am the Vice President of Purchasing and Production for Countryside Industries, Inc. ("Countryside"), the plaintiff in this lawsuit.

2.    Countryside is a landscaping contractor serving the greater Chicago area.

3.    Countryside's employees are represented by Local 150 of the Operating Engineers Union ("Local 150") and Teamsters Local 703 ("Teamsters").

4.    There is a longstanding dispute between these unions and the Laborers, the Defendants in this lawsuit, over which union should represent employees doing landscaping work in the area.

5.    Countryside has no employees represented by the by the Defendants.

6.    In 2006, Countryside began working on a project known as "The Arboretum," a shopping complex being built in South Barrington, Illinois.

7.    The Arboretum is a project under development by The Arboretum, LLC.

8.    Ultimately, Ragnar Benson was selected by The Arboretum, LLC as one of many general contractors at the Arboretum project.

9.    Ragnar Benson entered into a contract with Countryside to do certain landscaping work at the Arboretum.

10.    Additionally, the Arboretum contracted directly with Countryside to install brick pavers at the Arboretum.

11.    On March 24, 2008, Defendants sent a letter to Ragnar Benson demanding that Countryside be removed from the Arboretum jobsite.

12.    Thereafter, following increased threats to Ragnar Benson and the Arboretum, the Defendants picketed the Arboretum jobsite on May 19, 2008, effectively shutting down any and all work occurring there.

13.    To avoid further picketing, and since the Defendants refused to give any assurances that there would be no further picketing, Countryside was removed from the jobsite for several weeks.

14.    Countryside then filed unfair labor practice charges with Region 13 of the National Labor Relations Board, complaining that Defendants had violated 8(b)(4) of the National Labor Relations Act by (1) engaging in secondary threats and picketing; and (2) engaging in picketing for the purpose of forcing Ragnar Benson and the Arboretum to assign landscaping work to employees represented by the Defendants rather than to Countryside.

15.    I have personal knowledge of the facts above and I certify under penalty of perjury that the foregoing facts are true and correct.

Lee Keenan

Date: 8/6/2008

# EXHIBIT B



**United States Government**
**NATIONAL LABOR RELATIONS BOARD**
**Region 13**
**209 South LaSalle Street — 9ᵗʰ Floor**
**Chicago, Illinois  60604**
Telephone (312) 353-7570 Fax (312) 886-1341

July 14, 2008

Countryside Industries, Inc.
ATTN:  David Christlieb, Esq.
29947 North Rand Road
Wauconda, IL 60084

Countryside Industries and Ragnar Benson
Route 59 and Route 72
(Arboretum)
Barrington, IL 60010

Re:    Laborers Union Local 118
        (Countryside Industries and Ragnar Benson)
        Case 13-CC-2661

Dear Mr. Christlieb:

The Region has carefully investigated and considered your charge against Laborers Union Local 118 alleging violations under Section 8 of the National Labor Relations Act.

*Decision to Dismiss:* Based on that investigation, I have concluded that further proceedings are not warranted, and I am dismissing your charge for the following reasons:

The Charged Party has signed a Settlement Agreement that remedies the allegations of the charge that I found to have merit.  In view of the undertaking contained in the attached Settlement Agreement, it does not appear that it would effectuate the purposes of the National Labor Relations Act to institute further proceedings at this time.

**Your Right to Appeal:** The National Labor Relations Board Rules and Regulations permit you to obtain a review of this action by filing an appeal with the GENERAL COUNSEL of the National Labor Relations Board. Use of the Appeal Form (Form NLRB-4767) will satisfy this requirement. However, you are encouraged to submit a complete statement setting forth the facts and reasons why you believe that the decision to dismiss your charge was incorrect.

The appeal may be filed by regular mail addressed to the General Counsel at the National Labor Relations Board, Attn: Office of Appeals, 1099 14th Street, N.W., Washington D.C. 20570-0001. A copy of the appeal should also be mailed to the Regional Director.

An appeal also may be filed electronically by using the e-filing system on the Agency's Website. In order to file an appeal electronically, please go to the Agency's Website at www.nlrb.gov, under "**E-GOV.**" Select "**E-filing**" and then click on "**File an Appeal or Other Document**"



received
7-15-08

Enclosure:
Appeal forms

cc:   Ronald Meisburg, General Counsel
      NLRB
      **Washington, DC 20570**

David Christlieb, Attorney
Littler Mendelson
200 N LaSalle St, Suite 2900
Chicago, IL 60601-1014

Mr. Martin Flanagan
Laborers Union, Local 118
2430 East Rand Road
Arlington Heights, IL 60004

Marc Pekay, Esq.
Law Offices of Marc Pekay
30 North LaSalle, Suite 2426
Chicago, IL 60602

Ragnar Benson Construction LLC
250 South Northwest Highway
Park Ridge, IL 60068

Thomas Y. Mandler, Esq.
Hinshaw & Culbertson
222 N. LaSalle Street, Suite 300
Chicago, IL 60601

KM/lit

APPROVED NOTICE FOR POSTING WILL BE PRINTED ON AN OFFICIAL NLRB FORM

**Deleted:** DRAFT NOTICE -

  

# NOTICE TO EMPLOYEES AND MEMBERS

## POSTED PURSUANT TO A SETTLEMENT AGREEMENT APPROVED BY A REGIONAL DIRECTOR OF THE NATIONAL LABOR RELATIONS BOARD

### AN AGENCY OF THE UNITED STATES GOVERNMENT

Laborers Union Local 118
Case: 13-CC-2661

### FEDERAL LAW GIVES YOU THE RIGHT TO:

Form, join, or assist a union
Choose representatives to bargain with us on your behalf
Act together with other employees for your benefit and protection
Choose not to engage in any of these protected activities.

WE WILL NOT induce or encourage any individual employed by Ragnar Benson Construction, The Arboretum of South Barrington, or any other person engaged in commerce or in an industry affecting commerce to engage in a strike or refusal in the course of their employment to use, manufacture, process, transport or otherwise handle or work on any goods, articles, materials, or commodities or to refuse to perform any other services, in order to force or require Ragnar Benson Construction, The Arboretum of South Barrington or any other person to stop doing business with Countryside Industries.

WE WILL NOT picket, threaten to picket or otherwise threaten, coerce or restrain Ragnar Benson Construction, The Arboretum of South Barrington, or any other person engaged in commerce or in an industry affecting commerce, in order to force or require them to stop doing business with Countryside Industries.

WE WILL NOT in connection with our labor dispute with Countryside Industries, picket or cause picketing at the job site located at the intersection of Route 59 and Route 72, South Barrington, Illinois, at any locations other than the gate reserved for Countryside Industries, its employees and suppliers.

WE WILL NOT in any like or related manner restrain or coerce you in the exercise of the rights protected by Section 7 of the Act.

WE WILL in connection with our labor dispute with Countryside Industries honor the reserved gate system established at the intersection of Route 59 and Route 72, South Barrington, Illinois job site by limiting picketing to the reserved gate used by Countryside Industries, its employees and suppliers.

LABORERS UNION LOCAL 118
(Respondent)

Dated: _____    By: _____
(Representative)                                    (Title)

The National Labor Relations Board is an independent Federal agency created in 1935 to enforce the National Labor Relations Act. We conduct secret-ballot elections to determine whether employees want union representation and we investigate and remedy unfair labor practices by employers and union. To find out more about your rights under the Act and how to file a charge or election petition, you may speak confidentially to any agent with the Board's Regional Office set forth below. You may also obtain information from the Board's website: www.nlrb.gov.

209 South LaSalle Street, 9th Floor          Telephone: (312) 353-7570
Chicago, Illinois  60604                              Hours of Operation: 8:30 a.m. to 5:00 p.m.

WE WILL NOT in connection with our labor dispute with Countryside Industries, picket or cause picketing at the job site located at the intersection of Route 59 and Route 72, South Barrington, Illinois, at any locations other than the gate reserved for Countryside Industries, its employees and suppliers.

WE WILL NOT in any like or related manner restrain or coerce you in the exercise of the rights protected by Section 7 of the Act.

WE WILL in connection with our labor dispute with Countryside Industries honor the reserved gate system established at the intersection of Route 59 and Route 72, South Barrington, Illinois job site by limiting picketing to the reserved gate used by Countryside Industries, its employees and suppliers.

**LABORERS UNION LOCAL 118**
_____
(Respondent)

Dated: _____  By: _____

(Representative)                                    (Title)

The National Labor Relations Board is an independent Federal agency created in 1935 to enforce the National Labor Relations Act. We conduct secret-ballot elections to determine whether employees want union representation and we investigate and remedy unfair labor practices by employers and union. To find out more about your rights under the Act and how to file a charge or election petition, you may speak confidentially to any agent with the Board's Regional Office set forth below. You may also obtain information from the Board's website: www.nlrb.gov.

209 South LaSalle Street, 9th Floor                Telephone: (312) 353-7570
Chicago, Illinois 60604                                Hours of Operation: 8:30 a.m. to 5:00 p.m.

FORM NLRB-4775
(3-95)

UNITED STATES GOVERNMENT
NATIONAL LABOR RELATIONS BOARD
**SETTLEMENT AGREEMENT**

**IN THE MATTER OF**

LABORERS UNION LOCAL 118                                                13-CC-2661

The undersigned Charged Party and the undersigned Charging Party, in settlement of the above matter, and subject to the approval of the Regional Director for the National Labor Relations Board, **HEREBY AGREE AS FOLLOWS:**

**POSTING OF NOTICE** — Upon approval of this Agreement and receipt of the Notices from the Region, which may include Notices in more than one language as deemed appropriate by the Regional Director, the Charged Party will post immediately in conspicuous places in and about its plant/office, including all places where notices to employees/members are customarily posted, and maintain for 60 consecutive days from the date of posting, copies of the attached Notice (and versions in other languages as deemed appropriate by the Regional Director) made a part hereof, said Notices to be signed by a responsible official of the Charged Party and the date of actual posting to be shown thereon.  In the event this Agreement is in settlement of a charge against a union, the union will submit forthwith signed copies of said Notices to the Regional Director who will forward them to the employer whose employees are involved herein, for posting, the employer willing, in conspicuous places in and about the employer's plant where they shall be maintained for 60 consecutive days from the date of posting.  Further, in the event that the charged union maintains such bulletin boards at the facility of the employer where the alleged unfair labor practices occurred, the union shall also post Notices on each such bulletin board during the posting period.

**COMPLIANCE WITH NOTICE** — The Charged Party will comply with all the terms and provisions of said Notice.

**BACKPAY**[1]. — Within 14 days from approval of this agreement the Charged Party will make whole the employee(s) named below by payment to each of them of the amount opposite each name.  The Charged Party will make appropriate withholdings for each named employee.

**NONCOMPLIANCE WITH SETTLEMENT AGREEMENT** — The Charged Party agrees that in case of non-compliance with any of the terms of this Settlement Agreement by the Charged Party, including but not limited to, failure to make timely installment payments of moneys, and after 15 days notice from the Regional Director of the National Labor Relations Board of such non-compliance without remedy by Charged Party, the Regional Director shall issue complaint in the instant case (or, if the Regional Director has withdrawn the complaint pursuant to the terms of this Settlement Agreement, the Regional Director shall reissue the complaint previously filed in the instant case). Thereafter, the General Counsel may file a motion for summary judgment with the Board on the allegations of the just issued complaint concerning the violations alleged therein. Charged Party understands and agrees that the allegations of the aforementioned complaint may be deemed to be true by the Board, that it will not contest the validity of any such allegations, and the Board may enter findings, conclusions of law, and an order on the allegations of the aforementioned complaint. On receipt of said motion for summary judgment the Board shall issue an Order requiring the Charged Party to Show Cause why said Motion of the General Counsel should not be granted. The only issue that may be raised in response to the Board's Order to Show Cause is whether Charged Party defaulted upon the terms of this settlement agreement. The Board may then, without necessity of trial or any other proceeding, find all allegations of the complaint to be true and make findings of fact and conclusions of law consistent with those allegations adverse to the Charged Party, on all issues raised by the pleadings. The Board may then issue an Order providing full remedy for the violations found as is customary to remedy such violations, including but not limited to the provisions of this Settlement Agreement. The parties further agree that the Board Order and a U.S. Court of Appeals Judgment may be entered hereon ex parte.

**SCOPE OF THE AGREEMENT** — This Agreement settles only the allegations in the above captioned case(s), and does not constitute a settlement of any other case(s) or matters.  It does not preclude persons from filing charges, the General Counsel from prosecuting complaints, or the Board and the courts from finding violations with respect to matters which precede the date of the approval of this Agreement regardless of whether such matters are known to the General Counsel or are readily discoverable. The General Counsel reserves the right to use the evidence obtained in the investigation and prosecution of the above captioned case(s) for any relevant purpose in the litigation of this or any other case(s), and a judge, the Board and the courts may make findings of fact and/or conclusions of law with respect to said evidence.

**REFUSAL TO ISSUE COMPLAINT** — In the event the Charging Party fails or refuses to become a party to this Agreement, and if in the Regional Director's discretion it will effectuate the policies of the National Labor Relations Act, the Regional Director

---

[1] Interest will be computed at the adjusted prime interest rate in effect per annum and shall be added to backpay, dues, fees, and/or assessment as appropriate, to be computed in the manner set forth in *Isis Plumbing Co.* 138 NLRB 716 (1962); *New Horizons for the Retarded*, 283 NLRB 1173.

shall decline to issue a Complaint herein (*or a new Complaint if one has been withdrawn pursuant to the terms of this agreement*), and this Agreement shall be between the Charged Party and the undersigned Regional Director.  A review of such action may be obtained pursuant to Section 102.19 of the Rules and Regulations of the Board if a request for same is filed within 14 days thereof. This Agreement shall be null and void if the General Counsel does not sustain the Regional Director's action in the event of a review.  Approval of this Agreement by the Regional Director shall constitute withdrawal of any Complaint(s) and Notice of Hearing heretofore issued in this case, as well as any answer(s) filed in response.

**PERFORMANCE —** Performance by the Charged Party with the terms and provisions of this Agreement, as modified by the Attachment, if any, the terms of which are expressly incorporated herein, shall commence immediately after the Agreement is approved by the Regional Director, or if the Charging Party does not enter into this Agreement, performance shall commence immediately upon receipt of the Charged Party of advice that no review has been requested or that the General Counsel has sustained the Regional Director.

**NOTIFICATION OF COMPLIANCE —** The undersigned parties to this Agreement will each notify the Regional Director in writing what steps the Charged Party has taken to comply herewith.  Such notification shall be given within 5 days, and again after 60 days, from the date of the approval of this Agreement.  In the event the Charging Party does not enter into this Agreement, initial notice shall be given within 5 days after notification from the Regional Director that no review has been requested or that the General Counsel has sustained the Regional Director.  Contingent upon compliance with the terms and provisions hereof, no further action shall be taken in this case.

| Charged Party LABORERS UNION LOCAL 118 | | Charging Party COUNTRYSIDE INDUSTRIES, INC. | |
|---|---|---|---|
| By:          Name and Title | Date | By:          Name and Title | Date |
| Recommended By: Board Agent | Date | Approved By: Regional Director | Date |

H:\R13COM\Samples\Settlement Agreements\13-CA-43936SA.doc 6/6/2007 9:48 AM

**ATTACHMENT TO SETTLEMENT AGREEMENT** 1. The specified paragraph(s) of the settlement agreement are amended to read as follows:

Scope of the Agreement: This Agreement settles only the allegations in the above captioned case(s), and does not constitute a settlement of any other case(s) or matters including but not limited to Case 13-CD-773. It does not preclude persons from filing charges, the General Counsel from prosecuting complaints, or the Board and the courts from finding violations with respect to matters which precede the date of the approval of this Agreement regardless of whether such matters are known to the General Counsel or are readily discoverable. The General Counsel reserves the right to use the evidence obtained in the investigation and prosecution of the above captioned case(s) for any relevant purpose in the litigation of this or any other case(s), and a judge, the Board and the courts may make findings of fact and/or conclusions of law with respect to said evidence.

2. The specified paragraph(s) of the settlement agreement are amended as follows:

**NON-ADMISSION** – By entering into this Settlement Agreement, the Charged Party does not admit that it violated the National Labor Relations Act.

Document4 6/4/2008 3:08 PM

**ATTACHMENT TO SETTLEMENT AGREEMENT** 1. The specified paragraph(s) of the settlement agreement are amended to read as follows:

Scope of the Agreement: This Agreement settles only the allegations in the above captioned case(s), and does not constitute a settlement of any other case(s) or matters including but not limited to Case 13-CD-773. It does not preclude persons from filing charges, the General Counsel from prosecuting complaints, or the Board and the courts from finding violations with respect to matters which precede the date of the approval of this Agreement regardless of whether such matters are known to the General Counsel or are readily discoverable. The General Counsel reserves the right to use the evidence obtained in the investigation and prosecution of the above captioned case(s) for any relevant purpose in the litigation of this or any other case(s), and a judge, the Board and the courts may make findings of fact and/or conclusions of law with respect to said evidence.

2. The specified paragraph(s) of the settlement agreement are amended as follows:

**NON-ADMISSION** – By entering into this Settlement Agreement, the Charged Party does not admit that it violated the National Labor Relations Act.

Document4 6/4/2008 3:08 PM

# EXHIBIT C

Joseph Barker                          ~~February~~ June 25, 2008
Regional Director, NLRB    re: 13-CD-773

    Without admitting to engaging in any
improper action, Laborers Local 118 disclaims
brick paving work at the Arboretum project.
    WE WILL NOT PICKET or STRIKE
at The Arboretum project in
South Barrington or Countryside
Landscaping or otherwise cause
or attempt to cause employees to
Strike or Refuse to Perform
Any work in order to force
Ragnar Benson to Assign Brick
Paving work to employees who
are represented by Laborers Local
Union rather than to employees
who are members of, or Represented
by Operating Engineers and Teamsters
Local 703.
    Laborers Local 118 withdraws
any grievance against Ragnar Benson
over the brick paving work at
The Arboretum Project.
    ~~WE WILL~~ Laborers Local 118 will not
Picket the Arboretum regarding Countryside
performing Landscape work. ~~at~~
                    Laborers Local 118
                    Marc M. Pekay,
                    attorney